**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHILONG HUYNH, | No. 20-55343 |
| Petitioner-Appellant, | D.C. No. |
| v. | 3:15-cv-01924-BTM-AGS |
| J. LIZARRAGA, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, District Judge, Presiding

Argued and Submitted November 8, 2023
Pasadena, California

Before: WALLACE, W. FLETCHER, and OWENS, Circuit Judges.

California state prisoner Philong Huynh appeals from the district court's

denial of his 28 U.S.C. § 2254 habeas petition challenging his convictions for first-

degree felony murder, Cal. Penal Code § 189, two counts of sodomy of an

intoxicated person, *id.* § 286(i), and two counts of oral copulation of an intoxicated

person, *id.* § 288a(i) (current version at *id.* § 287(i)). Applying the Antiterrorism

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and Effective Death Penalty Act ("AEDPA"), the district court in relevant part denied habeas relief on—and granted a certificate of appealability for—Huynh's claims of: (1) insufficient evidence to support the murder, oral copulation, and sodomy convictions as to Williams; (2) actual innocence; (3) inability to confront the nurse who examined Jeremiah following his sexual assault; (4) inability to confront Jeremiah at trial; and (5) ineffective assistance of counsel. We review the district court's denial of habeas relief de novo. *Panah v. Chappell*, 935 F.3d 657, 663 (9th Cir. 2019).

Under AEDPA, we may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

Where the last state-court decision on the merits is not accompanied by reasons, the federal habeas court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . [and] presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, the California Supreme Court summarily denied Huynh's petition for review, so the California Court of Appeal's

decision provides the "relevant rationale." *Id.* As the parties are familiar with the facts, we do not recount them here. We affirm.[1]

1.      Huynh alleges that there was insufficient evidence to support his convictions for murder, sodomy, and oral copulation of Williams, and that the state court's decision to the contrary constitutes error under AEDPA. The state court did not err in denying this claim.

Viewing the evidence "in the light most favorable to the prosecution," a "rational trier of fact could have found" Huynh guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Substantial evidence—including DNA and other forensic evidence, the diazepam found in Williams's body, the sexual assault (that may have caused an obstruction to Williams's breathing), and Huynh's modus operandi—supported the guilty verdict. Huynh cannot overcome the "double dose" of deference due under AEDPA and *Jackson. Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The state court similarly did not err in denying Huynh's insufficient evidence claim as to his convictions for sodomy and oral copulation of Williams. Huynh contends that the state court committed AEDPA error under both § 2254(d)(1) and (d)(2). However, the California Court of Appeal neither applied

---

[1] The Motion for Leave to File an Amicus Brief (ECF No. 34) is DENIED. The proposed amicus's seven Requests for Judicial Notice (ECF Nos. 37, 38, 51, 55, 64, 69, and 70) are also DENIED.

3

a standard fundamentally at odds with Supreme Court precedent nor confronted a set of facts that are materially indistinguishable from a relevant Supreme Court decision and yet arrived at a different result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (defining the meaning of "contrary to" in § 2254(d)(1)). The court applied the correct standard (the *Jackson* standard) and, in so doing, reasonably found that a rational trier of fact could find the essential elements of sodomy and oral copulation met beyond a reasonable doubt.

Huynh relies on (1) a lack of evidence linking him to the semen found on Williams's mouth and anus; (2) a lack of required penetration for sodomy and contact for oral copulation; and (3) a failure to establish that Williams was still alive at the time of the sexual assault. But substantial evidence, including DNA and modus operandi evidence, showed that a rational juror could have found Huynh guilty beyond a reasonable doubt of the sex crimes against Williams. The California Court of Appeal's decision to that effect thus did not constitute error under § 2254(d)(1).

Nor did the court err under § 2254(d)(2). *See Murray v. Schriro*, 745 F.3d 984, 1012 (9th Cir. 2014) (noting that, to find an error, we must be "convinced that an appellate panel . . . could not reasonably conclude that the state court's findings are supported by the record" (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds by Cullen v. Pinholster*, 563 U.S. 170,

184-85 (2011))).  Huynh asserts that the state court's factfinding was unreasonable because the court incorrectly stated that Williams's autopsy found diazepam metabolite—rather than only diazepam.  Huynh cites the absence of metabolite (the result of the breakdown of diazepam) to argue that Williams died shortly "after ingesting diazepam and before any sexual acts took place."  But the court's mistake did not go to a "material factual issue" and its ultimate conclusion that Williams was alive at the time of the sexual assault was reasonable.  *Taylor*, 366 F.3d at 1001.

2.    Huynh's actual innocence claim (based on supposedly new evidence not presented at trial) fails for several reasons.  First, the claim is procedurally defaulted, because Huynh failed to include it in his petition for state habeas, and California's rule against successive petitions bars him from presenting this claim to the state courts.  *See Casey v. Moore*, 386 F.3d 896, 920-21 (9th Cir. 2004); *In re Clark*, 855 P.2d 729, 760 (Cal. 1993).  Second, a freestanding claim of actual innocence is likely not cognizable in non-capital habeas.  *See Prescott v. Santoro*, 53 F.4th 470, 482 (9th Cir. 2022).  Third, the claim falls far below the "extraordinarily high" threshold required to prevail, even on de novo review.  *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

Assuming we proceed with de novo review, much of Huynh's "new" evidence was available to the defense at the time of trial and some of his arguments

5

as to what this evidence shows were already presented to the jury. Thus, Huynh cannot "show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Huynh's alternative request for an evidentiary hearing is barred by AEDPA because he has not shown either "a new rule of constitutional law" or new facts that could not have been previously discovered through the exercise of "due diligence." 28 U.S.C. § 2254(e)(2).

3. Next, we consider the first Confrontation Clause issue—one of two Huynh has raised in this appeal. Huynh argues that he was denied his Sixth Amendment right to confrontation when a supervising nurse (Claire Nelli) testified about a sexual assault examination of Jeremiah that was conducted by another nurse. AEDPA governs our review; a state court's decision cannot be contrary to, or involve an unreasonable application of, law that has not been clearly established by the Supreme Court. *Id.* § 2254(d)(1).

Supreme Court precedent in the area of forensic reports and expert witnesses—culminating in the fractured plurality opinion in *Williams v. Illinois*, 567 U.S. 50 (2012)—is not clearly established. Accordingly, the California Court of Appeal reasonably concluded that *Williams* does not bar expert witnesses from

6

offering their expert opinions based on photographs and reports prepared by others. And to the extent that Nelli's testimony relayed or referenced the examining nurse's process or findings, that fact-pattern—a supervisor testifying on behalf of an unavailable supervisee—was expressly left open in *Bullcoming v. New Mexico*, 564 U.S. 647, 672 (2011) (Sotomayor, J., concurring). Given the lack of clarity in Supreme Court caselaw, the state court did not err in denying Huynh's Confrontation Clause claim. *See Crater v. Galaza*, 491 F.3d 1119, 1123 (9th Cir. 2007) (precluding habeas relief under § 2254(d)(1) when relief depends on the resolution of a question left open by the Supreme Court).

Even if Huynh could show a violation of his Sixth Amendment right, any such error was harmless. *See United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004). Given substantial corroborating evidence and the overall strength of the prosecution's case, the error did not have a "substantial and injurious effect or influence in determining the jury's verdict" as to the two sex crimes against Jeremiah. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Although the state court did not conduct a harmlessness analysis, we nevertheless apply the *Brecht* standard to evaluate the harmlessness of constitutional error at trial. *See Fry v. Pliler*, 551 U.S. 112, 120-22 (2007).

4.      The state court did not err in concluding that Huynh's Confrontation

Clause rights were not violated when the trial court admitted Jeremiah's prior testimony after he refused to appear at trial. Contrary to what the government alleges, this claim was presented to the state courts and is encompassed within the district court's certificate of appealability.

Nevertheless, Huynh's claim fails. Admitting Jeremiah's preliminary hearing testimony squarely aligns with Supreme Court precedent: Jeremiah was properly deemed unavailable for trial and defense counsel had an opportunity to cross-examine him at the preliminary hearing. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). As the trial judge explained, the government did "everything [it could] to obtain the appearance of Jeremiah." *See Hardy v. Cross*, 565 U.S. 65, 69 (2011) (reiterating that a witness is unavailable where "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial" (quoting *Barber v. Page*, 390 U.S. 719, 725 (1968))).

Huynh insists that he should have been able to cross-examine Jeremiah about his potential drug use. But the Confrontation Clause guarantees the right to an effective cross-examination; it does not guarantee the right to ask every conceivable question. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Huynh's Sixth Amendment right to confront Jeremiah was not violated by the admission of Jeremiah's preliminary hearing testimony. Under AEDPA, the California Court of Appeal did not err in coming to the same conclusion.

8

Moreover, even if the state court erred, any such error was harmless. Again, we apply *Brecht*'s "substantial and injurious effect" standard despite the fact that the California Court of Appeal did not conduct a harmless error analysis. *See Fry*, 551 U.S. at 120-22. The insinuation that Jeremiah was a drug user would have been unlikely to substantially influence the jury's verdict. As a Navy corpsman, Jeremiah was subject to regular and random drug tests, which he had never failed. A drug user, moreover, could still be the victim of a sexual assault that involved drugging the victim.

5.     Finally, Huynh is not entitled to relief on his ineffective assistance of counsel claim. Specifically, Huynh contends that his counsel failed to question Jeremiah about a discrepancy between two toxicology reports. When Jeremiah's urine was tested on June 7, 2009, it tested positive for Xanax (a benzodiazepine). A test the following day came up positive for Klonopin (another benzodiazepine). Huynh again suggests that this proposed line of questioning could have shown that Jeremiah was a drug user.

Huynh presented this argument to the state court on collateral review. Because the California Supreme Court's brief order denying the petition does not specify which grounds applied to which claims, federal review is not precluded. *See Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996) ("[A] procedural default based on an ambiguous order that does not clearly rest on independent and

9

adequate state grounds is not sufficient to preclude federal collateral review.").

In any event, Huynh's claim fails because he has neither shown (1) that his counsel's performance was deficient, in that it fell below an objective standard of reasonableness, or (2) resulting prejudice, such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Defense counsel cross-examined Jeremiah extensively at the preliminary hearing. And Huynh's proposed line of questioning was not critical to his defense. Whatever the reason for the discrepancy between the toxicology reports, it is highly unlikely that any explanation would have altered the outcome of the proceeding.

**AFFIRMED.**